**NOT FOR PUBLICATION**

FILED

JUL 1 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

  v.

DAVID A. KATZ,

      Defendant - Appellant.

No. 25-981

D.C. No.
3:21-cr-00455-IM-1

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted June 10, 2026
Portland, Oregon

Before: CHRISTEN, HURWITZ, and BADE, Circuit Judges;
Concurrence by Judge Christen.

David A. Katz appeals his convictions and sentence for conspiracy to

defraud the United States, in violation of 18 U.S.C. § 371, and for knowingly filing

false Currency Transaction Reports (CTRs), in violation of 31 U.S.C. § 5324(a)(2),

(d)(2). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

    1.    Sufficient evidence supports Katz's conspiracy conviction. *See*

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

*United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1229 (9th Cir. 2017) ("Claims of insufficient evidence to support a jury verdict are reviewed de novo."). The evidence at trial established that Katz knew that his co-conspirator was using a fake driver's license and fake Social Security numbers. The evidence also established that between 2014 and 2017, Check Cash Pacific, a firm for which Katz served as a manager and compliance officer, filed hundreds of CTRs, reporting millions of dollars of payroll checks cashed by Katz's co-conspirator, all of which contained the co-conspirator's fake name and fake Social Security numbers. A rational juror could therefore conclude that Katz agreed to defraud the United States by obstructing the lawful functions of the Internal Revenue Service (IRS) by deceitful or dishonest means.[1] *See id.* ("Evidence supporting a conviction is sufficient if, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))).

    2.    The district court did not abuse its discretion by giving deliberate ignorance instructions on the charges of conspiracy and filing false CTRs. *See United States v. Yi*, 704 F.3d 800, 804 (9th Cir. 2013) ("A district court's decision

---

[1] Contrary to Katz's contention, the buyer-seller defense does not apply to his conspiracy conviction. *See United States v. Lennick*, 18 F.3d 814, 819–20 (9th Cir. 1994); *United States v. Rodman*, 776 F.3d 638, 644 (9th Cir. 2015).

25-981

to give a particular jury instruction is reviewed for abuse of discretion.").  "[A] party is entitled to an instruction to help it prove its theory of the case, if the instruction is 'supported by law and has foundation in the evidence.'"  *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) (en banc) (quoting *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)).  "When a party requests instructions on alternative theories, the district judge must consider the instructions separately and determine if the evidence could support a verdict on either ground."  *Id.*; *see Griffin v. United States*, 502 U.S. 46, 59 (1991).

At trial, the evidence established that Katz cashed millions of dollars in checks for the scheme from approximately 2007 to 2017.  Katz also set a special rate for the scheme and regularly communicated with his co-conspirator, including instructing him to go to a different store location "[i]f the check was over $5,000."  The evidence also established that Katz gave his co-conspirator advance notice that the IRS was investigating the scheme and asked his co-conspirator to provide a recorded statement to protect him from the investigation.  And Katz did not question his co-conspirator when he filled out a new customer profile card in 2015 using a different Social Security number than the one he had been using for the prior eight years.  It was therefore reasonable for the district court to determine that "the jury could rationally find willful blindness."  *See Heredia*, 483 F.3d at 922.

3.     The district court did not abuse its discretion in excluding evidence

25-981

relating to the Woodburn fraudulent document operation under Federal Rule of Evidence 403. *See United States v. Espinoza*, 880 F.3d 506, 511 (9th Cir. 2018) ("We review the district court's exclusion of evidence for abuse of discretion."). The evidence Katz sought to introduce relating to the Woodburn operation was "at most marginally probative." *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). Indeed, there was no evidence that the fake license at issue was purchased from the Woodburn operation or that it was a high-quality fake license. There was also no evidence that the Woodburn operation only produced high-quality fake licenses. Because "we are left with only speculation, not proof," and the "evidence, if admitted, would have created a substantial risk of confusion," the district court did not abuse its discretion in excluding it under Rule 403. *United States v. Espinoza-Baza*, 647 F.3d 1182, 1190 (9th Cir. 2011); *see id.* ("Under our precedent, even 'a small risk of misleading the jury' substantially outweighs the probative value of minimally probative evidence." (quoting *Hitt*, 981 F.2d at 424)); *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) ("We may affirm an evidentiary ruling on any ground supported by the record, regardless of whether the district court relied on the same grounds or reasoning we adopt.").

4.      The district court also did not abuse its discretion in refusing to provide a spoliation instruction based on the destruction of documents from the investigation of the Woodburn operation. *See United States v. Sivilla*, 714 F.3d

4

1168, 1172 (9th Cir. 2013) ("We review a district court's refusal to give an adverse inference instruction, when properly raised by the appellant, for abuse of discretion."). Katz does not argue that the government knew that the evidence from the Woodburn operation was relevant to this case before it was destroyed. The government also established Katz's knowledge through other evidence at trial, including his co-conspirator's use of different Social Security numbers, and Katz had other ways to challenge his co-conspirator's credibility. Because "the balance between 'the quality of the Government's conduct and the degree of prejudice to the accused'" does not "weigh[] in favor of the defendant," a spoliation instruction was not warranted. *See United States v. Robertson*, 895 F.3d 1206, 1213 (9th Cir. 2018) (quoting *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (en banc) (Kennedy, J., concurring), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) (en banc)).

5.    Because Katz has failed to demonstrate that the district court erred, there was no cumulative error. *See United States v. Gutierrez*, 995 F.2d 169, 173 (9th Cir. 1993); *United States v. Berry*, 627 F.2d 193, 201 (9th Cir. 1980).

6.    Katz's argument that restitution ordered under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, is criminal punishment and therefore subject to the *Apprendi* rule is foreclosed by our precedent. *See United States v. Green*, 722 F.3d 1146, 1149 (9th Cir. 2013) ("Our own court . . . has categorically held

25-981

that *Apprendi* and its progeny—*Blakely* [*v. Washington*, 542 U.S. 296 (2004)] and

*United States v. Booker*, 543 U.S. 220 (2005)—don't apply to restitution.").

Because the Supreme Court's decision in *Ellingburg v. United States*, 607 U.S. 163

(2026), is not clearly irreconcilable with our decision in *Green*, we cannot disturb

the district court's restitution order.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th

Cir. 2003) (en banc).

**AFFIRMED**.

25-981

FILED

JUL 1 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*United States v. Katz*, No. 25-981

CHRISTEN, Circuit Judge, concurring:

I concur fully in the panel's memorandum disposition, but I write separately to argue that restitution issued pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, violates the Sixth Amendment and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Our caselaw holds otherwise, *United States v. Green*, 722 F.3d 1146, 1148-51 (9th Cir. 2013), and the memorandum disposition correctly follows that binding precedent, *see Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). But in my view, that precedent is mistaken.

In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. For *Apprendi* purposes, the term "statutory maximum" means "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington*, 542 U.S. 296, 303 (2004). Put another way, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303-04. The principles of *Apprendi* "ensur[e] that the judge's authority to sentence derives wholly from the jury's verdict." *Id.* at 306; *see also Ring v. Arizona*, 536 U.S. 584, 602 (2002).

1

When a judge orders restitution pursuant to the MVRA, the jury's verdict alone does not permit the judge to impose that restitution "*without* any additional findings." *Blakely*, 542 U.S. at 304. Fixing a restitution amount requires fact-gathering, 18 U.S.C. § 3664(a), and fact-finding, *id.* § 3664(e), with disputes "as to the proper amount or type of restitution" to be "resolved by the court by the preponderance of the evidence," *id.* The court ultimately orders restitution "in the full amount of each victim's losses as determined by the court." *Id.* § 3664(f)(1)(A). In the absence of this judicial fact-finding, the maximum amount of restitution that can be imposed—"solely on the basis of facts reflected in the jury verdict," *Blakely*, 542 U.S. at 303 (emphasis omitted)—is typically zero dollars. Any increase in that amount requires finding additional facts. Because those facts increase the penalty for a crime, *Apprendi* demands that they be found by a jury. *See* 530 U.S. at 490.[1]

I am not alone in expressing this view—several dissents have made the same argument in greater detail. *Hester v. United States*, 586 U.S. 1104, 1105-07 (2019) (Gorsuch, J., dissenting from the denial of certiorari); *United States v. Leahy*, 438 F.3d 328, 339-48 (3d Cir. 2006) (en banc) (McKee, J., concurring in part and dissenting in part); *United States v. Carruth*, 418 F.3d 900, 904-06 (8th Cir. 2005)

---

[1] The Supreme Court has held that "the MVRA makes abundantly clear that restitution is criminal punishment." *Ellingburg v. United States*, 607 U.S. 163, 167 (2026).

2

(Bye, J., dissenting). But I am outnumbered—indeed, the circuits appear to be unanimous in concluding that *Apprendi* does not apply to restitution.[2] I think that conclusion is wrong, and therefore urge the court to reconsider its precedent in an appropriate case.

---

[2] *United States v. Milkiewicz*, 470 F.3d 390, 403-04 (1st Cir. 2006); *United States v. Reifler*, 446 F.3d 65, 118-20 (2d Cir. 2006); *Leahy*, 438 F.3d at 337-38; *United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012); *United States v. Garza*, 429 F.3d 165, 170 (5th Cir. 2005) (per curiam); *United States v. Sosebee*, 419 F.3d 451, 460-62 (6th Cir. 2005); *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005); *Carruth*, 418 F.3d at 903-04; *Green*, 722 F.3d at 1148-51; *United States v. Visinaiz*, 428 F.3d 1300, 1316 (10th Cir. 2005); *United States v. Williams*, 445 F.3d 1302, 1310-11 (11th Cir. 2006).